IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RIDGEWOOD FALLS CONDOMINIUM UNIT OWNERS ASSOCIATION, INC., individually and on behalf of other similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>COUNTRY MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   NO. 1:21-cv-1205-JES-JEH<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant COUNTRY Mutual Insurance Company® ("CMIC"), through undersigned counsel, hereby files this Memorandum in Support of Defendant's Motion to Dismiss, and states as follows:

### SUMMARY OF ARGUMENT

Plaintiff Ridgewood Falls Condominium Unit Owners Association alleges that CMIC breached a property insurance policy by including labor costs in the depreciated value of Plaintiff's property for actual cash value ("ACV") payment purposes. While Plaintiff seeks relief from this Court sitting in Peoria, Illinois, the policy was not issued in Illinois. Plaintiff is a condominium association incorporated under Ohio laws, and its condominiums are located in the city of Medina, Medina County Ohio. Ohio law permits insurance companies to calculate ACV by applying depreciation to the estimated cost to repair or replace damaged property. Ohio law does not require that labor costs be excluded from the depreciation calculation. Ohio insurance regulations and Ohio state cases do not exclude labor from depreciation for ACV purposes. In addition, restricting insurance companies from depreciating labor costs, where the insurance

policy does not preclude such depreciation, would have the effect of inflating ACT payments through judicial fiat.

While Plaintiff includes class action allegations, Plaintiff's claim arises under Ohio law and should be dismissed.

## ARGUMENT

### I. Failure to State a Plausible Claim

A court analyzing a motion to dismiss must determine if the factual allegations in the complaint "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is warranted where the complaint fails to set forth sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In evaluating a 12(b)(6) motion, this Court construes the complaint in a favorable light and accepts all well-pleaded allegations as true. What the Court does not accept as true are legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that merely "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal citations omitted). Complaints suffering from these faults simply do not meet federal pleading standards. *See id.* To the contrary, only a complaint that contains enough *facts* to state a claim to relief can survive a motion to dismiss. *Twombly*, 550 U.S. at 570. For a claim to meet this standard of facial plausibility, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II.     Applicable Law & *Erie*

Plaintiff asserts "on information and belief" that this Court has subject matter jurisdiction under the Class Action Fairness Act. (Dkt. #1 at ¶ 13).[1]

Here, *all* of Plaintiff's structures were located in Medina, Ohio. (Dkt. #1 at ¶ 8). Under Illinois' "most significant contacts" test,[2] "the location of the insured risk is given special emphasis." *See Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 268 Ill. App. 3d 655, 664 (1st Dist. 1994) (finding that "[t]he location of the insured risk is given special emphasis" the court applied California law to insured risk located in California); *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 243 Ill. App. 3d 471, 488 (1st Dist. 1993) (finding that "[t]he location of the insured risk will be given greater weight than any other single contact", the court applied Illinois law to insured risk located in Illinois) (citations omitted).

When, as here, the insured property is located in a *single* state, Illinois courts routinely hold that the state where the property is located provides the applicable law.[3] *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 874 (7th Cir. 2000) ("When we have applied Illinois' 'most significant contacts' test to other insurance policies covering properties or risks located in

---

[1] For purposes of clarification, CMIC does not admit that this Court has jurisdiction under the Class Action Fairness Act.

[2] Federal courts apply the choice of law rules of the state in which they sit. *Pucci v. Litwin*, 828 F. Supp. 1285, 1299 (N.D. Ill. 1993).

[3] Further, the other significant considerations also support the application of Ohio law. Plaintiff is incorporated in Ohio and it's principal place of business is in Ohio. (*Id*). CMIC sells insurance policies in Ohio. (Dkt. #1 at ¶ 10). For choice of law purposes, the place of the last act to give rise to the insurance contract is the state where the policy is delivered and the premiums paid. *Emerson Elec. Co. v. Aetna Cas. & Sur. Co.*, 319 Ill. App. 3d 218, 233 (1st Dist. 2001) (citing 4 Appleman on Insurance 2d § 21.6 at 278 (1998)). And the major factor on the place of performance is the place where the claim is to be paid. *Id.* (citing 4 Appleman on Insurance 2d § 21.6 at 278 (1998)).

one state, we have held that the law of the state in which the insured property can be found will usually govern."); *Society of Mount Carmel*, *supra* at 664; *Diamond State*, *supra* at 488; *see also Zurich Ins. Co. v. Sunclipse, Inc.*, 85 F. Supp. 2d 842, 849–50 (N.D. Ill. 2000).

The proper function of this Court is to determine what Ohio law is, not what the Court thinks it ought to be. *Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487, 497 (1941). When there is no clear guidance from the Ohio Supreme Court, this Court must use its best judgment to determine how that court would construe its own law. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 417 (7th Cir. 1997). The Court may consider decisions of lower Ohio state courts and the courts of other jurisdictions, as well as other persuasive authorities. *Id.*

This Court may consider decisions from federal District Courts sitting in Ohio, and decisions from the Sixth Circuit Court of Appeals, but it is not bound to follow those decisions. Such decisions are not, in fact state law; they are simply "*Erie* guesses" as to what Ohio law would be. *See Bridgeview Health Care Center, Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389 (2014). The Ohio Supreme Court is not bound by the decisions of the federal trial and appellate courts sitting in Ohio with respect to issues of State law. *Nagel v. Horner*, 162 Ohio App. 3d 221, 224-25, 833 N.E.2d 300, 302 (Ohio Ct. App. 2005). *See also DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015) (state courts are the ultimate authority on their own law). The Illinois state courts are not bound by the decisions of the federal courts sitting in Ohio predicting Ohio law. *Id.* This Court is not bound by decisions of the Sixth Circuit nor by decisions from the Northern District of Ohio and the Southern District of Ohio.

The twin aims of the *Erie* doctrine are to discourage forum-shopping and to avoid the inequitable administration of the laws. *E.g., Salve Regina College v. Russell*, 499 U.S. 225, 234 (1991). The U.S. Supreme Court was concerned with these aims when it ruled that the federal

courts of appeals cannot defer to a district court's presumed mastery of forum State law. *Id.* at 239. If Plaintiff had filed this case in State court in Medina County, Ohio, or in State court in McLean County, Illinois, the State court would not be bound to follow the decisions of the Sixth Circuit Court of Appeals. To view the "*Erie* guesses" of the Sixth Circuit as binding on this Court would therefore encourage and promote forum-shopping and would "create a dual system of enforcement of state-created rights, in which the substantive rule applied to a dispute may depend on the choice of forum." *Salve Regina College,* 499 U.S. at 234. *See AUI Ins. Co. v. TIG Ins. Co.,* 934 F. Supp. 2d 594, 606 (S.D.N.Y. 2013) ("Thus, there is no longer a principled reason for this Court to defer to the Seventh Circuit's prediction of Illinois law, but not, for example, the Ninth Circuit's prediction of that law.")

### III. Plaintiff Fails To State A Claim For Breach of Contract or For Declaratory Judgment under Ohio Law Because The Policy Is Not Ambiguous And It Does Not Preclude Depreciation of Labor in the Calculation of ACV

Under Ohio law, ambiguous provisions in insurance policies are construed against the insurer and in favor of the insured, but a court cannot create ambiguity where there is none. *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008). "The mere potential for ambiguity" is not sufficient to mandate a coverage result against the insurance company. *Id.* "If there is no ambiguity, there is no issue of fact to be determined, and the terms will be given the effect called for by the plain language of the contract." *Williams-Diggins v. Permanent General Assurance Corp.*, 157 N.E.3d 220, 224 (Ohio. Ct. App. 2020).

Plaintiff does not attach the policy to the Complaint, and does not quote policy language. Plaintiff admits that CMIC covered Plaintiff's storm damage. (Dkt. #1, Complaint, at ¶ 21). Plaintiff alleges vaguely that CMIC calculated its ACV payment to Plaintiff "pursuant to the RCLD methodology." (*Id.,* at ¶ 22). Plaintiff alleges that CMIC estimates the full amount of

labor and materials required to repair or replace property and then subtracts depreciation for physical deterioration in the "replacement cost less depreciation" ("RCLD") method. (*Id.,* at ¶3). Plaintiff's final conclusory allegation is that "The Ridgewood Policy does not define ACV so as to permit the labor withholdings complained of herein." (*Id.,* at ¶ 23). Yet, Plaintiff does not allege that the policy language prohibits CMIC from depreciating labor costs along with other costs of repair or replacement. Plaintiff's position is that simply because the policy does not define ACV or depreciation, the policy is automatically ambiguous and that CMIC breached the policy by depreciating labor costs, despite the fact that no policy language precluded such depreciation.

The mere absence of a definition in an insurance policy does not render the policy inherently ambiguous. *Nationwide Mutual Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995); *Cranfield v. State Farm Fire & Cas. Co.*, 340 F. Supp. 3d 670, 673 (N.D. Ohio 2018), *rev'd*, 798 Fed. App'x 929 (6th Cir. 2020); *Perry v. Allstate Indemnity Co.*, 2018 WL 6169311, at *2 (N.D. Ohio Nov. 26, 2018), *rev'd*, 953 F.3d 417 (6th Cir. 2020). When the policy does not define a term or phrase, Ohio courts look to the common meaning of the phrase and Ohio case law using the language. *Konik ex rel. Konik v. Motorists Mutual Ins. Co.*, No. 2009-P-0019, 2010 WL 1255914, at *4 (Ohio Ct. App. 2010); *Auto-Owners Ins. Co. v. Merillat*, 854 N.E.2d 513, 517 (Ohio Ct. App. 2006); *Cranfield*, 340 F. Supp. 3d at 673, *rev'd*, 798 Fed. App'x 929 (6th Cir. 2020); *Perry*, 2018 WL 6169311, at *2, *rev'd*, 953 F.3d 417 (6th Cir. 2020).

The Ohio Administrative Code sets forth the definition of actual cash value that encompasses depreciation of labor costs as well as of other expenses of repair or replacement. "The insurer shall determine actual cash value by determining the replacement cost of property at the time of loss, including sales tax, less any depreciation." Ohio Admin. Code § 3901-1-

54(I)(2)(a). As a matter of Ohio law, the word "any" is used interchangeably with the word "all." *Risner v. Ohio Dep't of Natural Resources, Ohio Div'n of Wildlife*, 144 Ohio St. 3d 278, 42 N.E.3d 718, 723 (2015). CMIC's practice, as alleged by Plaintiff, is consistent with this regulation. The regulation plainly supports the conclusion that *any* depreciation may be subtracted from replacement cost, and the regulation does not restrict insurance companies from including labor costs in depreciation, including under circumstances where the policy does not define ACV or depreciation.

The Ohio Administrative Code's definition of actual cash value is consistent with the plain meaning of that term. Black's Law Dictionary defines the term as replacement cost minus normal depreciation. Black's Law Dictionary (10th ed. 2014). Depreciation is commonly defined as a reduction in an asset's value because of use, wear, obsolescence or age. *Id.* "Placing the term depreciation within the definition of ACV as used in the [insurance policy], it is clear that depreciation is intended to include labor as well as materials. The property that the contract insures is [the insured's structure]. The policy does not separately insure the labor and building materials, but the sum total of these parts." *Cranfield*, 340 F. Supp. 3d at 674, *rev'd*, 798 Fed. App'x 929 (6th Cir. 2020).

So far as defense counsel is aware, there is no controlling decision from the Ohio Supreme Court indicating that Ohio law forbids the depreciation of labor in the calculation of ACV, where the policy does not do so. There is, similarly, no Ohio Court of Appeals decision case that so holds. There is no controlling authority from the Ohio state appellate courts supporting Plaintiff's breach of contract and declaratory judgment claims. To the contrary, Ohio appellate courts have held in numerous cases that ACV may be defined or understood as replacement cost minus depreciation, without placing any qualification relating to labor. *See,*

*e.g., Williams-Diggins*, 157 N.E.3d at 224 (citing *Modesty v. Scottsdale Surplus Lines*, 8th Dist. Cuyahoga No. 86912, 2006-Ohio-4272, 2006 WL 2374311, at ¶ 11); *Asmaro v. Jefferson Ins. Co. of N.Y.*, 574 N.E.2d 1118, 1112 (Ohio Ct. App. 1989).

Ohio courts have recognized in other contexts that labor costs are included in depreciation calculations. In a child support action challenging the lower court's inclusion of labor costs as part of the total amount designated as expenditures for replacement business equipment, an unreported Ohio appellate court opined that it was "fundamentally unsound" to separate labor costs from materials costs of repair items:

> More importantly, appellant's attempt to separate the labor costs from the material costs of repair items is fundamentally unsound. As noted above, the trial court reasonably found that the replacement concrete was "replacement business equipment." Both labor and materials were both necessary to replace the concrete, and the costs of both are reflected in the long-term economic value of such improvements. Thus, the total cost of replacing the concrete, whether designated as labor or materials, should be subject to depreciation deductions. As a result, the trial court did not abuse its discretion in including the labor component of the concrete replacement into the amount to be depreciated as "replacement business equipment."

*Helfrich v. Helfrich*, No. 97APF08-975, 1998 WL 63528, at *3 (Ohio Ct. App. Feb. 10, 1998). *Helfrich* therefore provides guidance regarding the propriety of depreciating labor costs when calculating ACV.

In addition, two Ohio trial courts have addressed the issue in the context of insurance. In *Parker v. American Family Ins. Co.,* No.865773 (Ohio Ct. Common Pleas June 13, 2019), Judge Ashley Kilbane determined "that Ohio law permits labor depreciation" and therefore granted a motion to dismiss in a homeowner property insurance context. This opinion is attached as Exhibit 1 (see pages 6-8 of same). In *Ingram v. Liberty Ins. Corp.,* No. 16CVH06-5538 (Ohio Ct. Common Pleas Mar. 13, 2018), Judge Michael Holbrook determined that "there are at least

Page **8** of **18**

62379296.v1

two distinct ways to interpret the depreciation component of the calculation of actual cash value rendering the term ambiguous" and therefore denied a motion for judgment on the pleadings in a homeowner property insurance case. This opinion is attached as Exhibit 2 (see pages 5-6 of same).

CMIC acknowledges that the federal Court of Appeals for the Sixth Circuit recently predicted that the Ohio Supreme Court would hold, if presented the question, that insurance companies may not depreciate labor in calculating ACV where the policy does not define ACV or depreciation. *See Perry v. Allstate Indemnity Co.*, 953 F.3d 417 (6th Cir. 2020); *Cranfield v. State Farm Fir & Cas. Co.*, 798 Fed. App'x 929 (6th Cir. 2020) (per curiam) (following *Perry*); *see also Donofrio v. Auto-Owners (Mutual) Ins.*, 2020 WL 1470865 (S.D. Ohio Mar. 26, 2020) (following *Perry* and *Cranfield*). District Judge Boyko of the Northern District of Ohio, on the other hand, reached the opposite conclusion. *Cranfield v. State Farm Fire & Cas. Co.*, 340 F. Supp. 3d 670 (N.D. Ohio 2018), *rev'd*, 798 Fed. App'x 929; *Perry v. Allstate Indemnity Co.*, 2018 WL 6169311 (N.D. Ohio Nov. 26, 2018), *rev'd*, 953 F.3d 417. None of these decisions are binding on this Court, which must perform its task of predicting how the Ohio Supreme Court would rule if this question were properly presented to it. Moreover, the District Judges and the Sixth Circuit Judges alike recognized that there was no controlling Ohio state appellate decisions on the issue, and that the majority rule from other jurisdictions outside Ohio is that the insurance company is not proscribed from depreciating labor when no policy provisions prevent it.

District Judge Boyko's decisions in *Perry* and *Cranfield* are well reasoned and persuasive. Judge Boyko determined that the insurance policies were not ambiguous. First, Judge Boyko followed established Ohio caselaw that the absence of definitions does not necessarily make terms ambiguous. He followed Ohio precedent for the proposition that courts

must give undefined terms their plain and ordinary meaning unless it results in absurdity or unless another meaning is clearly evident from the face or overall contents of the agreement. *Sunoco, Inc. v. Toledo Edison Co.*, 953 N.E.2d 284, 292-93 (Ohio 2011).  Judge Boyko then applied existing Ohio law to give undefined terms their plain and ordinary meaning.  To ascertain the meaning of ACV, Judge Boyko looked to Black's Law Dictionary for the definition, "replacement cost minus normal depreciation."  Black's Law Dictionary (10th ed. 2014).  He again looked to Black's Law Dictionary to determine that "depreciation commonly focuses on the value of the whole product, rather than the component parts."  *Cranfield*, 340 F. Supp. 3d at 673-74 (citing *Graves v. American Family Mut. Ins. Co.*, 686 Fed. App'x 536, 540 (10th Cir. 2017), *rev'd*, 798 Fed. App'x 929; *Perry*, 2018 WL 6169311, at *3 (same), *rev'd*, 953 F.3d 417.  Judge Boyko further analyzed Ohio state court precedent to determine that the same language used in the policies at issue had been determined to be clear and unambiguous. *Cranfield*, 340 F. Supp. 3d at 674,  *rev'd*, 798 Fed. App'x 929; *Perry*, 2018 WL 6169311, at *3, *rev'd*, 953 F.3d 417.  He then analyzed the Ohio Administrative Code and found further support in the regulatory definition of ACV (including "less *any* depreciation") for the determination that the policies were unambiguous.  *Cranfield*, 340 F. Supp. 3d at 674-75,  *rev'd*, 798 Fed. App'x 929; *Perry*, 2018 WL 6169311, at *4, *rev'd*, 953 F.3d 417.

Finally, Judge Boyko looked to persuasive authority.  Finding no controlling Ohio state appellate decisions, Judge Boyko considered an unpublished decision by the Sixth Circuit Court of Appeals decided under Kentucky law, *Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. App'x 703 (6th Cir. 2018).  *Cranfield*, 340 F. Supp. 3d at 676-77,  *rev'd*, 798 Fed. App'x 929; *Perry*, 2018 WL 6169311, at *5-6, *rev'd*, 953 F.3d 417.  Judge Boyko did not follow the majority decision from *Hicks*, because its reasoning was inconsistent with the principles that under Ohio

law undefined contract terms are not automatically deemed ambiguous and, instead, that such terms should be considered under a plain meaning analysis. *Cranfield*, 340 F. Supp. 3d at 676, *rev'd*, 798 Fed. App'x 929; *Perry*, 2018 WL 6169311, at *5, *rev'd*, 953 F.3d 417. Judge Boyko instead agreed with much of the reasoning of the dissenting judge in *Hicks,* Judge Griffin, including on the unambiguous meaning of ACV under a Kentucky insurance regulation. *Cranfield*, 340 F. Supp. 3d at 676-77 (citing *Hicks*, 751 Fed. Appx. at 712 (Griffin, J., dissenting)), *rev'd*, 798 Fed. App'x 929; *Perry*, 2018 WL 6169311, at *6 (citing *Hicks*, 751 Fed. App'x at 712 (Griffin, J., dissenting)), *rev'd*, 953 F.3d 417. Judge Boyko then considered, and found persuasive, the majority view among state and federal courts generally that labor costs should be included in depreciation. *Cranfield*, 340 F. Supp. 3d at 677, *rev'd*, 798 Fed. App'x 929; *Perry*, 2018 WL 6169311, at *6, *rev'd*, 953 F.3d 417. Similarly, Judge Griffin in his dissent in the *Hicks* case considered these majority rule cases and found no reason why Kentucky's Supreme Court would join the minority view. *Hicks*, 751 Fed. App'x at 713-14 (citing cases).

In contrast to Judge Boyko's persuasively reasoned decisions, the Sixth Circuit decision in *Perry* simply ignores and fails to acknowledge the Ohio state court precedent that terms in insurance policies are not ambiguous simply because they are undefined and that such terms should be given their plain meaning. The Sixth Circuit decision uses a presumption of ambiguity to justify construing the insurance policies against the insurer. The majority decision also ignored the fact that the adjective "any" was interchangeable with "all" in construing the Ohio insurance regulation. *See Perry*, 953 F.3d at 422 ("In [Allstate's] view, 'any depreciation' means all types of depreciation. We read 'any depreciation' as simply saying 'whatever depreciation there happens to be.'"). The Sixth Circuit majority then looked to the prior Sixth Circuit

decision in *Hicks* and to a decision from the Tennessee Supreme Court, *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 178-79 (Tenn. 2019), to reach the prediction that the Ohio Supreme Court would join the minority of jurisdictions that hold that insurance companies may not depreciate labor.

Two of the judges in *Perry* held that "as a matter of law" it was improper for Allstate to depreciate labor in arriving at its ACV calculation. *Perry*, 953 F.3d at 423. Judge Readler, however, dissented from this holding. Judge Readler agreed with the majority that the insurance policy was ambiguous (again, without acknowledging that undefined terms are not ambiguous *per se* and without purporting to apply a plain meaning rule). However, Judge Readler noted Ohio precedent that where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Id.* at 426. Judge Readler therefore expressed the view that it was wrong to rule as a matter of law and would have instead remanded for further factual development. He added, "Of course, today's decision has no effect on the Ohio courts, and so it may be nothing more than a moment in time for all but the parties here." *Id.*

Judge Readler's last comments highlight the problems facing this Court and arising from Plaintiff's decision to file its case here instead of in an Ohio state court. The state trial court in Medina Ohio is not bound by the Sixth Circuit decision in *Perry*. State trial court in Ohio have decided the issues differently than the majority opinion in *Perry*. This Court may consider the reasoning of the Sixth Circuit decision in *Perry* as persuasive authority, but it is not bound by it. With all due respect, the Sixth Circuit decision in *Perry* is based on subjective views of what Ohio law should be, not what it is. The Sixth Circuit in *Perry* overlooked Ohio precedent with respect to the determination of insurance policy terms, rejected the majority rule applied in courts across the nation, and looked to the Court's own precedent in a Kentucky law case to

reach the result that the judges in the majority opinion felt best served insureds and to erode further the majority rule in other jurisdictions, with which the judges disagreed. Judge Readler warned that the "decision would have no effect on Ohio courts," and it appears to be true from counsel's research that no Ohio state courts have followed the decision in *Perry*. But, the Sixth Circuit itself followed *Perry* with little independent analysis in *Cranfield* and the Southern District of Ohio has also followed *Perry*, *Cranfield*, and *Hicks* (again with no analysis of or citation to the Ohio precedent relating to the proper construction of undefined terms in an insurance policy). *See Donofrio v. Auto-Owners (Mutual) Ins.*, 2020 WL 1470865 (S.D. Ohio Mar. 26, 2020).

This Court should therefore not simply defer to the flawed decision of the Sixth Circuit in *Perry*. Ohio law should not be different when the case is filed in federal court instead of state court. Undefined terms in an insurance policy are not necessarily ambiguous in Ohio state courts; they should not be presumed ambiguous in federal courts applying Ohio law. The term "any depreciation" (from the Ohio Administrative Code) should not mean "all depreciation" when the case is in state court, and "whatever depreciation there happens to be" when the case is in federal court.

Undue deference to the Sixth Circuit's decision risks promotion of forum shopping and stultifies development of the law within the Ohio state court system. This Court should therefore consider all opinions that may inform its effort to predict how the Ohio Supreme Court would rule, including Judge Boyko's decisions at the District Court in *Perry* and *Cranfield* as well as the state court opinions in *Helfrich* and *Parker*. This Court should consider prior Ohio caselaw on the point that undefined terms are not automatically deemed ambiguous, and the Court should apply the plain meaning rule to the Ridgewood insurance policy. This Court should also

consider whether there is a compelling reason to find that the Ohio Supreme Court would not follow the majority rule as developed over the past two decades in other jurisdictions across the country, that insurance companies may depreciate labor costs in calculating ACV, when the policy contains no language that precludes it.

Finally, from a policy perspective, a rule that prohibited insurers from including labor costs in depreciation in the calculation of actual cash value would have perverse results. Consider the following example (which is copied from and attributed to the motion to dismiss in the *Cranfield* case):

> Assume that in 1985, a homeowner installed a roof on his home using 30-year shingles. Today, after 30 years, the useful life of the roof has expired and it needs to be replaced. If the cost to replace the roof today would be $10,000, with $6,000 of that cost attributable to labor, Plaintiff's method for ascertaining actual cash value would dictate that the value of the roof just before the loss cannot be less than $6,000 *even though* its useful life is at an end. Moreover, as *more* time passes, the value of the roof (if measured by the cost for labor to repair) will *increase* under Plaintiff's theory as the cost for roofing labor continues to increase in the marketplace. This shows that paying undepreciated labor as part of the ACV payment places insureds in an *improved* position, but "[t]he purpose of actual cash value coverage is indemnification . . . to make the insured whole, but never to benefit the insured because the loss occurred." *D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1, 11 (Neb. 2012).

Appraisal and valuation guidelines published in the insurance industry and elsewhere do not support a rule prohibiting the inclusion of labor costs in depreciation. For example, under a section entitled "Depreciation Fallacies," one publication states:

> **Material Only.** Some adjusters believe only the material and not the labor should be depreciated. This makes little sense. An object derives value from both the material and labor that went into it. For example, assume that a twenty-year-old living room couch has served its useful life and is to be disposed of. More than just the material has depreciated: if material costs $150, and the labor to manufacture the piece (including profit) costs $200, the couch was worth $350. Now, twenty years later, all of its value has been 'used up,' not just the value represented by the material. The entire couch is worthless.

Ins. Institute of Am., Property Loss Adjusting 226 (James J. Markham, ed. 1990).

Property appraisal literature too specifies that labor costs should be depreciated when estimating property. "Appraisers estimate the cost to construct existing structures and site improvements (including direct costs . . . )," which are defined to include "[l]abor used in construction." Appraisal Institute, The Appraisal of Real Estate 562, 571, 572 (14th ed. 2013). "Appraisers then deduct all depreciation in the property improvements from the cost of the new structure as of the effective appraisal date." *Id*. at 562, and *see also* 568–69 (detailing appraisal steps including depreciation of direct costs).

In an analogous context, the IRS permits depreciation to the entire basis of property, which includes labor costs. *See* 26 U.S.C. § 167(a), (c)(1). IRS publications regarding basis calculation provide: "If you build property or have assets built for you, your expenses for this construction are part of your basis. Some of these expenses include the following costs[:] Land, ***Labor*** and materials, . . . ." I.R.S. Publ'n 501, Cat. No. 15094C (July 2011) (emphasis added); *see also* I.R.S. Publ'n 527, Cat. No. 15052W (Dec. 2013) ("Add to the basis of your property the amount an addition or improvement actually cost you . . . . includ[ing] all direct costs such as materials and ***labor*** . . . ." (emphasis added)).

## CONCLUSION

Based on the allegations in the Complaint, and Ohio law, CMIC's policy is not ambiguous. ACV simply means "the replacement cost of property at the time of loss, including sales tax, less *any* [i.e., *all*] depreciation." Ohio Admin. Code § 3901-1-54(I)(2)(a). The plain meaning of depreciation is simply a reduction in the overall value of the asset due to use, wear, obsolescence, or age. There is no language in the insurance policy that prevents CMIC from including labor costs in depreciation for purposes of calculating ACV. Plaintiff has not pleaded

facts sufficient to set forth a plausible claim that CMIC has breached the policy of insurance. Therefore, the Complaint must be dismissed.

Dated: December 10, 2021                COUNTRY MUTUAL INSURANCE COMPANY®

                                        By: /s/ David G. Lubben
                                            One of Its Attorneys

David G. Lubben
ARDC #6207729
Davis & Campbell L.L.C.
401 Main Street, Suite 1600
Peoria, IL  61602
Telephone:  (309) 673-1681
Facsimile:   (309) 673-1690
dglubben@dcamplaw.com


S. Ault Hootsell III (#17630)
Butler Snow LLP
201 St. Charles Avenue, Suite 2700
New Orleans, LA 70170
Telephone: (504) 299-7752
Facsimile: (504) 299-7701
E-mail: ault.hootsell@butlersnow.com


Counsel for Defendant
COUNTRY Mutual Insurance Company®

# CERTIFICATE OF COMPLIANCE PURSUANT TO
# CENTRAL DISTRICT OF ILLINOIS LOCAL RULE 7.1

Pursuant to Local Rule 7.1(B)(4) of the Rules of the United States District Court, Central District of Illinois, the undersigned hereby certifies that an analysis of the foregoing Memorandum, exclusive of the caption and the signature blocks, using the document information program of Microsoft Word yields the following results:

Words:  4,987

The Memorandum is therefore in compliance with the volume type limitation of Local Rule 7.1(B)(4).

By: /s/ David G. Lubben
One of Its Attorneys

David G. Lubben
ARDC #6207729
Davis & Campbell L.L.C.
401 Main Street, Suite 1600
Peoria, IL  61602
Telephone:  (309) 673-1681
Facsimile:   (309) 673-1690
dglubben@dcamplaw.com

# CERTIFICATE OF SERVICE

I certify that I filed the foregoing Memorandum in Support of Motion to Dismiss on December 10, 2021, in the CM/ECF system of this Court which will generate an electronic service copy upon Plaintiffs' counsel of record on the same day as filing.

By: /s/ David G. Lubben

David G. Lubben
ARDC #6207729
Davis & Campbell, LLC
401 Main Street, Suite 1600
Peoria, IL 61602
Telephone: (309) 673-1681
Facsimile: (309) 673-1690
dglubben@dcamplaw.com

S. Ault Hootsell III (#17630)
Butler Snow LLP
201 St. Charles Avenue, Suite 2700
New Orleans, LA 70170
Telephone: (504) 299-7752
Facsimile: (504) 299-7701
E-mail: ault.hootsell@butlersnow.com

Counsel for Defendant
COUNTRY Mutual Insurance Company®